2028.8888R/CMR

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ) | No. 19-22865 |
| AMRITA PATEL and ) | Chapter 7 |
| CORY DAVIS, ) | |
|     Debtors. ) | |
| ------------------------------------------- ) | Honorable Judge Janet S. Baer |
| DUPAGE CREDIT UNION, ) | |
|     Creditor/Plaintiff, ) | Adversary No. |
| ) | |
| v. ) | |
| ) | |
| CORY DAVIS, ) | |
|     Debtor/Defendant. ) | |

## ADVERSARY COMPLAINT / OBJECTION TO DISCHARGE

NOW COMES Creditor/Plaintiff DUPAGE CREDIT UNION, by and through attorneys Esp Kreuzer Cores LLP, and in support of its Objection to Discharge under 11 U.S.C.A. §523(a)(2)(A) of the Bankruptcy Code relating to the Loan and Security Agreement held by Creditor DUPAGE CREDIT UNION, states as follows:

1. This Honorable Court has jurisdiction over this objection pursuant to 28 U.S.C. § 1334. This matter constitutes a core proceeding pursuant to 28 U.S.C. §157(b)(2)(J). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This case was commenced by the Debtor's voluntary petition for relief under Chapter 7 of Title 11 of the United States Code on August 14, 2019.

3. In his voluntary petition, Schedule I, Debtor CORY DAVIS reports that he is unemployed. (See **Exhibit A**, Schedule I.)

4. In his Statement of Financial Affairs, Part 2, Paragraph 4 Debtor CORY DAVIS reports that he has $0.00 gross income from January 1 of the current year until the date he filed for bankruptcy, $0.00 gross income for the last calendar year from January 1 to December 31,

2018, and $0.00 gross income for the calendar year before that from January 1 to December 31, 2017. (See **Exhibit B**, Statement of Financial Affairs.)

5. In his voluntary petition, Schedule E/F, Debtor CORY DAVIS reports an unsecured claim held by DUPAGE CREDIT UNION in the amount of $3,061.00. (See **Exhibit C**, Schedule E/F.)

6. Said unsecured claim is based on a Loan and Security Agreement entered between Debtor/Defendant CORY DAVIS and Creditor/Plaintiff DUPAGE CREDIT UNION in the initial amount of $2842.65 on February 5, 2019. (See **Exhibit D**, Loan and Security Agreement.)

7. On February 5, 2019, when applying for the Loan for debt consolidation from Creditor DUPAGE CREDIT UNION, Debtor CORY DAVIS indicated that he had been employed as an Area Manager for Auntie Anne's since 3/22/2014 and his gross annual salary was $60,999.96. (See **Exhibit E**, written and endorsed loan Application.)

8. On February 5, 2019, Debtor CORY DAVIS accepted $2,842.65 in funds under the Loan and Security Agreement at 8.24% fixed annual percentage rate over 12 months with monthly payments of $247.24. (See **Exhibit D**.)

9. Debtor CORY DAVIS has not remitted any payments under the terms of the Loan and Security Agreement. (See **Exhibit F**, payment history.)

10. The Application presented by Debtor CORY DAVIS was submitted to Creditor DUPAGE CREDIT UNION under false pretenses, with false representations of employment and annual income, and with actual fraud and intent to defraud Creditor DUPAGE CREDIT UNION, a financial institution.

11.  The information provided by Debtor CORY DAVIS in the loan application was materially false with respect to Debtor's financial condition.

12.  Debtor CORY DAVIS is liable for the money obtained under the Loan and Security Agreement, and Creditor DUPAGE CREDIT UNION reasonably relied upon the employment and annual gross income information provided by Debtor CORY DAVIS in obtaining the loan, to the detriment of Creditor DUPAGE CREDIT UNION.

13.  Debtor CORY DAVIS intended to deceive Creditor DUPAGE CREDIT UNION in obtaining the loans which is apparent by his failure to make any payments under the Loan and Security Agreement.

14.  Pursuant to Bankruptcy Code §523(a)(2)(A), a discharge under §§727, 1141, 1228(a), 1228(b), or 1328(3) does not discharge an individual debtor from any debt for money to the extent obtained by the use of a statement in writing that is materially false, respecting the debtor's financial condition, on which the creditor to whom the debtor is liable for such money reasonably relied, and that the debtor caused to be made with intent to deceive.

15.  Under §523(a)(2)(A), Debtor CORY DAVIS should be denied discharge of the monies owed on the February 5, 2019 unsecured Loan and Security Agreement to Creditor DUPAGE CREDIT UNION due to his intent to deceive Creditor DUPAGE CREDIT UNION as such money was obtained by materially false information respecting the debtor's financial condition upon which Credit DUPAGE CREDIT UNION reasonably relied in granting the loan.

16.  There is currently due and owing on the Loan and Security Agreement the amount of $3,131.78 for principal and accrued interest which remains due plus continuing contractual interest at 8.24%, 0.67 per diem. (See **Exhibit F**.)

17.     DUPAGE CREDIT UNION consents to entry of final orders on judgment by the bankruptcy court.

WHEREFORE, Creditor/Plaintiff DUPAGE CREDIT UNION requests that this court deny discharge of the $3,131.78 due and owing on the February 5, 2019 Loan and Security Agreement to Debtor/Defendant CORY DAVIS, plus all accrued interest thereon as such money was obtained by materially false statements respecting the debtor's financial condition on which Creditor DUPAGE CREDIT UNION reasonably relied that Debtor CORY DAVIS caused to be made with the intent to deceive.

Dated: October 17, 2019

                                          Respectfully submitted,

                                          /s/ Christine M. Ryan
                                          Attorney for Creditor/Plaintiff
                                          DUPAGE CREDIT UNION

Christine M. Ryan
**ESP KREUZER CORES LLP**
400 S. County Farm Road, Suite 200
Wheaton, IL 60187
630/871-1002
630/871-0224 fax
cryan@ekclawfirm.com

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Amrita Patel** |
| Debtor 2 (Spouse, if filing) | **Cory Davis** |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF ILLINOIS |
| Case number (If known) | |

Check if this is:
☐ An amended filing
☐ A supplement showing postpetition chapter 13 income as of the following date:
_____ MM / DD/ YYYY

## Official Form 106I
## Schedule I: Your Income
12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

   | | Debtor 1 | Debtor 2 or non-filing spouse |
   |---|---|---|
   | Employment status | ■ Employed<br>☐ Not employed | ☐ Employed<br>■ Not employed |
   | Occupation | Account Exectutive | unemployed |
   | Employer's name | Kindred Healthcare | |
   | Employer's address | 2211 York Rod<br>Suite 215<br>Oak Brook, IL 60523 | |
   | How long employed there? | 2/2016 | |

### Part 2: Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | $ 5,833.00 | $ 0.00 |
| 3. | Estimate and list monthly overtime pay. | +$ 0.00 | +$ 0.00 |
| 4. | Calculate gross income. Add line 2 + line 3. | $ 5,833.00 | $ 0.00 |

Official Form 106I      Schedule I: Your Income


EXHIBIT A

8/14/19 10:31 AM

| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | **Amrita** | | **Patel** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Cory** | | **Davis** |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF ILLINOIS | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

# Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy    4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:  Give Details About Your Marital Status and Where You Lived Before

1. **What is your current marital status?**

   ■ Married
   ☐ Not married

2. **During the last 3 years, have you lived anywhere other than where you live now?**

   ☐ No
   ■ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|
| 30W056 Capistrano Court Naperville, IL 60563 | From-To: 8/2016 - 8/2017 | ■ Same as Debtor 1 | ■ Same as Debtor 1 From-To: |

3. **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

   ■ No
   ☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

### Part 2  Explain the Sources of Your Income

4. **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
   Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
   If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

   ☐ No
   ■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of Income Check all that apply. | Gross Income (before deductions and exclusions) | Sources of Income Check all that apply. | Gross Income (before deductions and exclusions) |
| From January 1 of current year until the date you filed for bankruptcy: | ■ Wages, commissions, bonuses, tips | $38,511.00 | ■ Wages, commissions, bonuses, tips | $0.00 |
| | ☐ Operating a business | | ☐ Operating a business | |

Official Form 107    Statement of Financial Affairs for Individuals Filing for Bankruptcy

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

EXHIBIT B (ALL-STATE LEGAL)

8/14/19 10:31AM

Debtor 1   Amrita Patel
Debtor 2   Cory Davis                                          Case number (if known) _____

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and exclusions) | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and exclusions) |
| For last calendar year:<br>(January 1 to December 31, 2018) | ■ Wages, commissions, bonuses, tips<br>☐ Operating a business | $123,183.00 | ■ Wages, commissions, bonuses, tips<br>☐ Operating a business | $0.00 |
| For the calendar year before that:<br>(January 1 to December 31, 2017) | ■ Wages, commissions, bonuses, tips<br>☐ Operating a business | $126,513.00 | ■ Wages, commissions, bonuses, tips<br>☐ Operating a business | $0.00 |

5.  Did you receive any other income during this year or the two previous calendar years?
    Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

    List each source and the gross income from each source separately. Do not include income that you listed in line 4.

    ■ No
    ☐ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income<br>Describe below. | Gross income from each source<br>(before deductions and exclusions) | Sources of income<br>Describe below. | Gross income<br>(before deductions and exclusions) |

**Part 3:   List Certain Payments You Made Before You Filed for Bankruptcy**

6.  Are either Debtor 1's or Debtor 2's debts primarily consumer debts?
    ☐ No.    Neither Debtor 1 nor Debtor 2 has primarily consumer debts. *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

    During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,825* or more?
    ☐ No.    Go to line 7.
    ☐ Yes    List below each creditor to whom you paid a total of $6,825* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
    * Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.

    ■ Yes.   Debtor 1 or Debtor 2 or both have primarily consumer debts.
    During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

    ■ No.    Go to line 7.
    ☐ Yes    List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|

8/14/19 10:31AM

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Amrita Patel** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Cory Davis** | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF ILLINOIS

Case number
(if known)  _____

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

**Part 1:    List All of Your PRIORITY Unsecured Claims**

1. Do any creditors have priority unsecured claims against you?
   ☐ No. Go to Part 2.
   ■ Yes.

2. List all of your priority unsecured claims. If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

(For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

| | | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|---|
| 2.1 | **IRS**<br>Priority Creditor's Name<br>**Internal Revenue Service**<br>**P.O. Box 7346**<br>**Philadelphia, PA 19101-7346**<br>Number Street City State Zip Code | Last 4 digits of account number _____ | $1,634.00 | $1,634.00 | $0.00 |
| | Who incurred the debt? Check one. | When was the debt incurred?  2016 & 2017 | | | |
| | ☐ Debtor 1 only | As of the date you file, the claim is: Check all that apply | | | |
| | ■ Debtor 2 only | ☐ Contingent | | | |
| | ☐ Debtor 1 and Debtor 2 only | ☐ Unliquidated | | | |
| | ☐ At least one of the debtors and another | ☐ Disputed | | | |
| | ☐ Check if this claim is for a community debt | Type of PRIORITY unsecured claim: | | | |
| | Is the claim subject to offset? | ☐ Domestic support obligations | | | |
| | ■ No | ■ Taxes and certain other debts you owe the government | | | |
| | ☐ Yes | ☐ Claims for death or personal injury while you were intoxicated | | | |
| | | ☐ Other. Specify _____ | | | |
| | | **Income Taxes** | | | |

Official Form 106 E/F          Schedule E/F: Creditors Who Have Unsecured Claims
Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com           11002


EXHIBIT C

8/14/19 10:31AM

Debtor 1  Amrita Patel
Debtor 2  Cory Davis                                         Case number (if known)

### 4.1.3  Dupage Credit Union

Nonpriority Creditor's Name

Pob 3930
Naperville, IL 60567
Number Street City State Zip Code

Last 4 digits of account number  **6302**                    **$3,061.00**

When was the debt incurred?  **Opened 02/19 Last Active 5/31/19**

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.

☐ Debtor 1 only
■ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

Is the claim subject to offset?
■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify  **Loan**

### 4.1.4  DuPage Medical Group

Nonpriority Creditor's Name
1100 W. 31st St
Suite 300
Downers Grove, IL 60515
Number Street City State Zip Code

Last 4 digits of account number                              **$5,400.00**

When was the debt incurred?

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

Is the claim subject to offset?
■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify  **Medical**

### 4.1.5  DuPage Medical Group

Nonpriority Creditor's Name
1100 W. 31st St
Suite 300
Downers Grove, IL 60515
Number Street City State Zip Code

Last 4 digits of account number                              **$17,475.00**

When was the debt incurred?

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.

☐ Debtor 1 only
■ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

Is the claim subject to offset?
■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify  **Medical**

DocuSign Envelope ID: 877C49F8-0BAB-429E-A6F1-8D35A6BF7288



P.O. Box 3930 Naperville, IL 60567-3930

# LOAN AND SECURITY AGREEMENTS and Disclosure Statement

☐ Covered Borrower Under Military Lending Act

| LOAN DATE | ACCOUNT NUMBER | LOAN NUMBER | MATURITY DATE |
|---|---|---|---|
| 2/5/2019 | [redacted] | 02 | 1/31/2020 |

| BORROWER 1 (Name & Address) | BORROWER 2 (Name & Address) |
|---|---|
| CORY S DAVIS<br>30W056 CAPISTRANO COURT APT 101<br>NAPERVILLE, IL 60563 | |

| BORROWER 3 (Name & Address) | BORROWER 4 (Name & Address) |
|---|---|
| | |

## TRUTH IN LENDING DISCLOSURE ('e' means an estimate)

| ANNUAL PERCENTAGE RATE<br>The cost of Your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost You. | Amount Financed<br>The amount of credit provided to You or on Your behalf. | Total of Payments<br>The amount You will have paid after You have made all payments as scheduled. | Total Sale Price<br>The total cost of Your purchase on credit is $ which includes Your downpayment of $ |
|---|---|---|---|---|
| 8.24 % | $124.20 | $2,842.65 e | $2,966.85 e | |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 11 | $247.24 | MONTHLY | BEGINNING 2/28/2019 |
| 1 | $247.21 e | | 1/31/2020 |

**Prepayment:** If You pay off early You will not have to pay a penalty.
**Required Deposit:** The Annual Percentage Rate does not take into account Your required deposit, if any.
**Demand:** ☐ This obligation has a demand feature.
☐ All disclosures are based on an assumed maturity of one year.

**Property Insurance:** You may obtain property insurance from anyone You want that is acceptable to the Credit Union. If You get the insurance from the Credit Union You will pay $

**Filing Fees** $    **Non-Filing Insurance** $

**Late Charge:**
A late charge of $25.00 per month will be added to your loan if your payment is more than 10 days delinquent.

**Security:** Collateral securing other loans with the Credit Union may also secure this Loan. You are giving a security interest in Your shares and dividends and, if any, Your deposits and interest in the Credit Union; and the Property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| | | | | | $ | |
| | | | | | $ | |
| | | | | | $ | |

Other (Describe)
Pledge of Shares $          in Account No.          $          in Account No.
See Your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

## ITEMIZATION OF THE AMOUNT FINANCED ('e' means an estimate)

| Itemization of Amount Financed of<br>$2,842.65 | Amount Given to You Directly<br>$ | Amount Paid on Your Account<br>$2,842.65 | Prepaid Finance Charge<br>$ |
|---|---|---|---|

**Amounts Paid to Others on Your Behalf:** (If an amount is marked with an asterisk (*) We will be retaining a portion of the amount.)

| $ | To | $ | To |
|---|---|---|---|
| $ | To | $ | To |
| $ | To | $ | To |
| $ | To | $ | To |
| $ | To | $ | To |
| $ | To | $ | To |
| $ | To | $ | To |


© CUNA Mutual Group 1999, 2000, 01, 02, 05, 06, 08, 2015, 18
All Rights Reserved

Page 1 of 5


EXHIBIT D

| Credit Union DuPage Credit Union | Acct No ███████3 | Loan No. 02 |

## MILITARY LENDING ACT DISCLOSURES

Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account).

A "Covered Borrower" for purposes of this loan means a consumer who, at the time the consumer becomes obligated on this loan, is a covered member or a dependent of a covered member as defined by the Military Lending Act. A Covered Borrower does not mean a consumer who (though a Covered Borrower at the time he or she became obligated on this transaction) no longer is a covered member or a dependent of a covered member as defined by the Military Lending Act.

## LOAN AGREEMENT

In this Loan Agreement ("Agreement") all references to "Credit Union", "We", "Our" or "Us" mean the Credit Union whose name appears above and anyone to whom the Credit Union assigns or transfers this Agreement. All references to "You" or "Your" mean each person who signs, or otherwise authenticates, this Agreement as a borrower.

**1. PROMISE TO PAY** - You promise to pay $2,842.65 to the Credit Union plus interest on the unpaid balance until what You owe has been repaid. For **fixed rate loans, the interest rate is** 8.24 % per year.

**Collection Costs:**

You promise to pay, subject to applicable law, all costs of collecting what you owe under this Agreement and all costs of realizing on any security for the Agreement, including court costs, collection agency fees and reasonable attorney fees. We may enter into a contingent or hourly fee arrangement with an attorney or collection agency and you agree that such an agreement is reasonable. This provision also applies to bankruptcy, appeals or postjudgment proceedings.

**2. PAYMENTS** - You promise to make payments of the amount and at the time shown in the Truth in Lending Disclosure. You may prepay any amount without penalty. If You prepay any part of what You owe, You are still required to make the regularly scheduled payments, unless We have agreed to a change in the payment schedule. Because this is a simple interest loan, if You do not make payments exactly as scheduled, Your final payment may be more or less than the amount of the final payment that is disclosed. If You elect voluntary payment protection, We will either include the premium or program fee(s) in Your payments or extend the term of Your loan. If the term is extended, You will be required to make additional payments of the scheduled amount, until what You owe has been paid. You promise to make all payments to the place We choose. If this loan refinances another loan You have with Us, the other loan will be canceled and refinanced as of the date of this loan. Unless otherwise required by law, payments will be applied to amounts owed in the manner We choose.

**3. LOAN PROCEEDS BY MAIL** - If the proceeds of this loan are mailed to You, interest on this loan begins on the date the loan proceeds are mailed to You.

**4. SECURITY FOR LOAN** - This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property securing other loans You have with Us also secures this loan, unless the property is a dwelling or otherwise prohibited by federal and/or state law. In addition to Your pledge of shares, We may also have what is known as a statutory lien on all individual and joint accounts You have with Us. A statutory lien means We have the right under federal and/or state law to claim an interest in Your accounts. Unless otherwise prohibited by federal and/or state law, We can enforce a statutory lien against Your shares and dividends and, if any, interest and deposits, in all individual and joint accounts You have with Us to satisfy any outstanding financial obligation that is due and payable to Us. We may exercise Our right to enforce this lien without further notice to You, to the extent permitted by law. *For all borrowers:* You pledge as security for this loan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts You have with the Credit Union now and in the future. **The statutory lien and/or Your pledge will allow Us to apply the funds in Your account(s) to what You owe when You are in default.** If a dollar amount and account number are listed in the "Security" section of the Truth in Lending Disclosure, You may not withdraw the amount that has been specifically pledged to secure this loan until the Credit Union agrees to release all or part of the pledged amount. The statutory lien and Your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

**5. DEFAULT** - You will be in default under this Agreement if You do not make a payment of the amount required on or before the date it is due. You will be in default if You break any promise You made in connection with this loan or if anyone is in default under any security agreement made in connection with this Agreement. You will be in default if You die, file for bankruptcy, become insolvent (that is, unable to pay Your bills and loans as they become due), or if You made any false or misleading statements in Your loan application. You will also be in default if something happens that We believe may seriously affect Your ability to repay what You owe under this Agreement or if You are in default under any other loan agreement You have with Us.

**6. ACTIONS AFTER DEFAULT** - When You are in default; We may demand immediate payment of the entire unpaid balance under this Agreement. If We demand immediate payment, You will continue to pay interest at the rate provided for in this Agreement, until what You owe has been repaid. **We will also apply against what You owe any shares and/or deposits**

| Credit Union DuPage Credit Union | Acct No ⬛⬛⬛3 | Loan No. 02 |

given as security under this Agreement. We may also exercise any other rights given by law when You are in default. Unless You are a Covered Borrower under the Military Lending Act, You waive any right You have to receive demand for payment, notice of intent to demand immediate payment and notice of demand for immediate payment.

**7. EACH PERSON RESPONSIBLE** - Each person who signs, or otherwise authenticates, this Agreement will be individually and jointly responsible for paying the entire amount owed under this Agreement. This means We can enforce Our rights against any one of You individually or against all of You together.

**8. LATE CHARGE** - If You are late in making a payment, You promise to pay the late charge shown in the Truth in Lending Disclosure. If no late charge is shown, You will not be charged one.

**9. DELAY IN ENFORCING RIGHTS** - We can delay enforcing any of Our rights under this Agreement any number of times without losing the ability to exercise Our rights later. We can enforce this Agreement against Your heirs or legal representatives.

**10. CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**11. NOTICES** - Notices will be sent to You at the most recent address You have given Us in writing. Notice to any one of You will be notice to all.

**12. USE OF ACCOUNT** - You promise to use Your account for consumer (personal, family or household) purposes, unless the Credit Union gives You written permission to use the account also for agricultural or commercial purposes, or to purchase real estate.

**13. NO ORAL AGREEMENTS** -- THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**14.** The following is required by Vermont law: NOTICE TO COSIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

**15. NOTICE TO UTAH BORROWERS:** This written Agreement is the final expression of the Agreement between You and the Credit Union. This written Agreement may not be contradicted by evidence of any oral agreement.

**16. OTHER PROVISIONS -**

You promise that if any document(s) contains an error or was improperly prepared or executed, you will promptly execute corrected documents.

## SECURITY AGREEMENT

In this Security Agreement ("Agreement") all references to "Credit Union", "We", "Our" or "Us" mean the Credit Union whose name appears on this document and anyone to whom the Credit Union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "You" or "Your" mean any person who signs, or otherwise authenticates, this Agreement.

**1. THE SECURITY FOR THE LOAN** - You give Us what is known as a security interest in the Property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest You give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which You buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money You receive from selling the Property or from insurance You have on the Property. If the value of the Property declines, You promise to give Us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS** - The security interest secures the Loan and any extensions, renewals or refinancings of the Loan. Unless prohibited by applicable law, the security interest also secures any other loans, including any credit card loan, You have now or receive in the future from Us and any other amounts You owe Us for any reason now or in the future, except any loan secured by Your principal dwelling. If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or Your principal dwelling, the Property will secure only this Loan and not other loans or amounts You owe Us.

**3. OWNERSHIP OF THE PROPERTY** - You promise that You own the Property or, if this Loan is to buy the Property, You promise You will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that You have not already told Us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise You will allow no other security interest or lien to attach to the Property either by Your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST** - If Your state issues a title for the Property, You promise to have Our security interest shown on the title. We may have to file what is called a financing statement to protect Our security interest from the claims of others. You irrevocably authorize Us to execute (on Your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in a form satisfactory to Us. You

NZX021-E

| Credit Union DuPage Credit Union | Acct No ███████3 | Loan No. 02 |

promise to do whatever else We think is necessary to protect Our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, We incur in protecting Our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY** - Until the Loan has been paid off, You promise You will: (1) Use the Property carefully and keep it in good repair. (2) Obtain Our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform Us in writing before changing Your address. (4) Allow Us to inspect the Property. (5) Promptly notify Us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle the Property in another state without telling Us.

**6. PROPERTY INSURANCE, TAXES AND FEES** - You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to Us. You may provide the property insurance through a policy You already have, or through a policy You get and pay for. You promise to make the insurance policy payable to Us and to deliver the policy or proof of coverage to Us if asked to do so.

If You cancel Your insurance and get a refund, We have a right to the refund. If the Property is lost or damaged, We can use the insurance settlement to repair the Property or apply it towards what You owe. You authorize Us to endorse any draft or check which may be payable to You in order for Us to collect any refund or benefits due under Your insurance policy.

If You do not pay the taxes or fees on the Property when due or keep it insured, We may pay these obligations, but We are not required to do so. Any money We spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and You will pay interest on those amounts at the same rate You agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor Our loans for the purpose of determining whether You and other borrowers have complied with the insurance requirements of Our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to Us and (2) the cost of determining compliance with the insurance requirements. If We add amounts for taxes, fees or insurance to the unpaid balance of the Loan, We may increase Your payments to pay the amount added within the term of the insurance or term of the Loan.

**7. INSURANCE NOTICE** - If You do not purchase the required property insurance, the insurance We may purchase and charge You for will cover only Our interest in the Property. The premium for this insurance may be higher because the insurance company may have given Us the right to purchase insurance after uninsured collateral is lost or damaged. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.**

**8. DEFAULT** - You will be in default if You break any promise You make or fail to perform any obligation You have under this Agreement. You will also be in default under this Agreement if the Loan is in default. You will be in default if any Property You have given Us as security is repossessed by someone else, seized under a forfeiture or similar law, or if anything else happens that significantly affects the value of the Property or Our security interest in it.

**9. WHAT HAPPENS IF YOU ARE IN DEFAULT** - When You are in default, We may demand immediate payment of the outstanding balance of the Loan without giving You advance notice and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If We ask, You promise to deliver the Property at a time and place We choose. If the Property is a motor vehicle or boat, You agree that We may obtain a key or other device necessary to unlock and operate it, when You are in default. We will not be responsible for any other property not covered by this Agreement that You leave inside the Property or that is attached to the Property. We will try to return that property to You or make it available for You to claim.

After We have possession of the Property, We can sell it and apply the money to any amounts You owe Us. We will give You notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code.

If You have agreed to pay the Loan, You must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what You owe under this Agreement. You agree to pay interest on that amount at the same rate as the Loan until that amount has been paid.

**10. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN** - We can delay enforcing any of Our rights under this Agreement any number of times without losing the ability to exercise Our rights later. We can enforce this Agreement against Your heirs or legal representatives. If We change the terms of the Loan, You agree that this Agreement will remain in effect.

**11. CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**12. NOTICE FOR ARIZONA OWNERS OF PROPERTY** - It is unlawful for You to fail to return a motor vehicle that is subject to a security interest, within thirty days after You have received notice of default. The notice will be mailed to the address You gave Us. It is Your responsibility to notify Us if Your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.00.

| Credit Union DuPage Credit Union | Acct N[redacted]63 | Loan No. 02 |

☐ *The following notice applies ONLY when the box at left is marked.*

**13. NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**14. OTHER PROVISIONS -**

## SIGNATURES

By signing, or otherwise authenticating, as Borrower, You agree to the terms of the Loan Agreement. If Property is described in the "Security" section of the Truth in Lending Disclosure, You also agree to the terms of the Security Agreement. If You sign, or otherwise authenticate, as "Owner of Property" You agree only to the terms of the Security Agreement.

**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT**

| Borrower 1 Signature | Date |
|---|---|
| DocuSigned by: X [signature] | 2/5/2019 (Seal) |
| CORY S DAVIS — 1B7A654SEFFD42F | |

| Borrower 2 Signature | Date |
|---|---|
| X | (Seal) |

| Signature | Date |
|---|---|
| X | (Seal) |

| Signature | Date |
|---|---|
| X | (Seal) |

☐ Borrower 3:
☐ Owner of Property     ☐ Witness

☐ Borrower 4:
☐ Owner of Property     ☐ Witness

DocuSign Envelope ID: 877C49F8-0BAB-429E-A6F1-8D35A6BF7286

# dupage credit union

P.O. Box 3930 Naperville, IL 60567

**APPLICATION**

DCU Acct. Number ███████3-Q2
Date 2/5/2019

Check below to indicate the type of account(s) and type of credit for which you are requesting. Married Applicants may apply for a separate account.

☑ LOANLINER Account/Loan: ☑ Individual ☐ Joint

Amount Requested $ 2,842.65     Approximate Term: 12 month(s)     Purpose/Collateral: Debt Consolidation

Payment Protection: Check coverage(s) desired. The Credit Union will disclose the cost of this voluntary insurance to you. A separate insurance election which discloses the terms and conditions must be signed for coverage to become effective.
☐ Single Credit Disability Insurance     ☐ Single Credit Life Insurance     ☐ Joint Credit Life Insurance

## APPLICANT INFORMATION

Your Name (Last, First, Initial): DAVIS, CORY S
Driver's License #: IL D120-1178-5049
Birthdate: ██/██/85
Social Security #: ████████
Cell Phone: (843) 531-3449
Home Phone: (843) 531-3449
Home Address: 30W056 CAPISTRANO COURT APT 101
Years There: 2 year(s)
City: NAPERVILLE     State: IL     Zip: 60563

Please check the one that applies: ☐ Living with parents  ☑ Rent $ 1,350.00  ☐ Other
☐ Own: Monthly $____  Balance $ 0.00  Estimated Value $____

Previous Home Address: 1712 SIMMS STREET
City: AURORA     State: IL     Zip: 60504

Employer's Name: AUNTIE ANNES
Employment Date: 3/22/2014
Position: AREA MANAGER
Business Phone: (843) 531-3449
Gross Annual Salary: $ 60,999.96
Other Income: $____     Source of Other Income:____

You need not disclose child support, alimony or maintenance income, but if you want the Credit Union to consider such income in connection with this loan application, please check here:
☐ Yes  Amount per month $____

Previous Employer's Name:____
Employment Dates (Mo/Yr to Mo/Yr):____
Position:____

Name of Nearest Relative Not Living With You: ████████
Relationship: Mother in Law
Phone Number: (908) 294-1633
Address: ████████
City: NORTH BRUNSWICK     State: NJ     Zip: 08902

Personal Reference: ████████
Relationship: Friend
Phone Number: (732) 991-1961
Address: ████████
City: KENDALL PARK     State: NJ     Zip: 08824

## OTHER: ☐ Co-Applicant ☐ Guarantor

(all applicant fields blank)

## ASSETS

Vehicles Owned | Year | Make | Model

Other Real Estate Owned (describe):

## DECLARATION

Please check the following:                                Yes  No
Have you ever filed bankruptcy?                            ☐    ☑
Do you have any outstanding judgements?                    ☐    ☑

Have you Co-signed on any other loan? Balance owed $ 0.00
Are you liable for alimony, child support or maintenance payments? $ 0.00 / month

To the best of my knowledge, I have no other debts. I understand that you will retain this data sheet. You are authorized to check my credit and employment plus answer any questions regarding my credit experience with you. I agree to allow the Credit Union to use this information to qualify me for additional products.

DocuSigned by: *Cory Davis* (signature)
—1D718548EFFD42F...

Date: 2/5/2019

Applicant's Signature                          Date          Co-Applicant's/Guarantor's Signature

EXHIBIT E

```
LOIN            ███3-02   DAVIS/CORY              LN:███      BR:  20  DT:093019
Current Balance   2962.65  Due Date       02/28/19  Coll Code 999 VRLCode    0
Payoff Int         157.74  Sched Pmt        247.24  Descr: PERSONAL
Payoff LC             .00  Past Due            .00  APR                08.2400
Payoff Amount     3120.39  Unpaid LC           .00  Daily Interest      .66883
Cur Escrow Bal        .00  Unpaid Int        76.14  Insurance Code
Pend Distrib          .00  Last Int Date 05/31/19  Entry Date         02/05/19
Unpaid Div            .00  Term                 12  Credit Avail           .00
Adjusted Escrow       .00  Unpd PP Int         .00  Unpaid Fees            .00
Payoff W/Escrow   3120.39  Cred Limit            0  Unpd Cred Ins          .00
                                                    Unapp Funds            .00
App Date         02/05/19  Loan Off/DecTell VSA/CLS Collector
Review Date      00/00/00  Original Amt    2842.65  Census Tract           .00
                           Pledge Amt          .00  Meth/Freq/Skip        T/M/
Alt Pmt              .00   Pledge Code           0  Action  O    Status     N
Alt Pmts Left          0   X Pledge           0-00  Ln Dr Acct               0
Co Makers              0   Last PBF Amt        .00
Credit Score    ███ Pur 40  Last PBF Date 00/00/00 Paid Off Date     00/00/00
C/O Date         06/28/19  YTD Int             .00  Last Pmt Amt        247.24
C/O Reason                 NYPD Int            .00  Last Pmt Date     05/31/19
MTD Prin             .00   YTD Prin            .00  TTD Prin               .00
                           DUPAGE CREDIT UNION           DATE:[09/30/19]
ID:[                       ]                                              ]
TRAN CODE:[    ]        PARAMETERS:[                                      ]
[
  other    GENERAL  INTERPT   PRINT                PRINTER        main
  keys     SCREEN             SCREEN               CONTROL        keys
```



EXHIBIT F

```
HIST      ▓▓▓▓3-02L  DAVIS/CORY                    09/30/19 01:26 PM  BR:0020
 ID  Post     Eff    Tran Ty   S/PR                                         Vouch
     Date     Date   Code pe   Amount    Interest      Fee     Balance     Number
78C 091619           LOCH          .00        .00      .00     2962.65         0
LAG 081619           LOX3          .00        .00      .00     2962.65         0
LAG 081619           FLAG          .00        .00      .00     2962.65         0
16C 071619           LOCH          .00        .00      .00     2962.65         0
KEP 062819           FLAG          .00        .00      .00     2962.65         0
DIB 062819           LOCH          .00        .00      .00     2962.65         0
77C 061619           LOCH          .00        .00      .00     2962.65         0
VSA 060419  053119   LOFE TR    -30.00        .00      .00     2962.65         0
VSA 060419           LOEX          .00        .00      .00     2932.65         0
VSA 060419  053119   LOJE VD   -171.68     -75.56      .00     2932.65         0
61L 053119  053119   PTOR VR    171.68      75.56      .00     2760.97         0
46C 051619           LOCH          .00        .00      .00     2932.65         0
VSA 050419  043019   LOFE TR    -30.00        .00      .00     2932.65         0
    *More In File - Continue?*
                         DUPAGE CREDIT UNION                     DATE:[09/30/19]
ID:[                       ]
TRAN CODE:[    ]       PARAMETERS:[                                            ]
[                                                                              ]
 other    GENERAL    INTERPT    PRINT                        PRINTER    main
 keys     SCREEN                SCREEN                       CONTROL    keys
```